**Shannon BRITTAIN, Petitioner**

**v.**

**Jeffrey A. BEARD, Ph. D. of the Pennsylvania Dept. of Crrn.s, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2007.

Decided Sept. 6, 2007.

Reconsideration Denied Oct. 5, 2007.

Shannon R. Brittain, petitioner, pro se.

Debra Sue Rand, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: COLINS, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Shannon Brittain (Brittain) has filed a complaint in this court's original jurisdiction seeking injunctive relief against Jeffrey A. Beard, Ph.D., Secretary of the Pennsylvania Department of Corrections (Department). Brittain and the Department have filed motions for summary relief, which are now before this court for disposition. We deny both parties summary relief.

In his complaint, Brittain alleges that the Department's Policy No. DC–ADM 803–1 is unconstitutional because: (1) the policy prohibits an inmate's access to pornography, which is defined to include any material that depicts mere nudity, including art work, drawings, photographs and Playboy magazine;[1] and (2) the policy has no legitimate penological purpose. The Department's stated purpose in defining pornography to include any material that depicts nudity is "to assist with rehabilitation and treatment objectives, reduce sexual harassment and prevent a hostile work environment." (Complaint, ex. A.) However, in an affidavit he attached to the complaint, Brittain asserts that mere nudity does not adversely affect his rehabilitation or treatment, does not cause him to sexually harass others and does not cause him to create a hostile work environment. (*See* Complaint, Affidavit.) Brittain seeks an order enjoining the Department from confiscating and destroying materials in his possession pursuant to the policy.[2]

The Department filed an answer with new matter. In new matter, the Department alleges that: (1) Brittain is a convicted rapist; (2) the policy, which became effective on January 1, 2006, gave inmates one year to turn in or mail out any pornographic materials in their possession; (3) Brittain did not turn in or mail out his pornographic materials; and (4) the policy

---

1. A Department bulletin issued on December 2, 2005, amended Policy No. DC–ADM 803–1 so that, as of January 1, 2006, material would be considered pornographic if:

    (2) the material contains nudity which means showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less that [sic] a fully opaque covering of any portion thereof below the top of the nipple (exposure through "see through" materials is considered nudity for the purposes of this definition).

(Complaint, ex. A.)

2. The Department's December 2, 2005, bulletin states: "Inmates will be able to turn in or mail out any pornographic materials in their possession thorough [sic] January 1, 2007. After that date, pornography will be considered contraband; it will be confiscated and destroyed and inmates will be subject to a misconduct for possession of contraband." (Complaint, ex. A.)

is related to legitimate purposes.[3] (New Matter, ¶¶ 10, 14–15, 17–25.) The Department attached to its new matter the "Verification" of a licensed psychologist and the "Verification" of a unit manager at one of the state prisons. Each declares under penalty of perjury that the factual averments set forth in the new matter are true and correct.

Responding to the Department's new matter, Brittain demands "strict peer-review scientific-evidence-proof" that banning mere nudity: (1) is consistent with the goal of rehabilitating inmates; (2) is consistent with treatment objectives for inmates; (3) prevents a hostile work environment for Department employees; (4) prevents employees and inmates from being "objectified" rather than being regarded as persons; (5) helps to teach inmates to view people as people; (6) prevents inappropriate sexual desires among inmates; and (7) prevents sexually offending behavior. (Answer to New Matter, ¶¶ 17–23.)

The Department and Brittain each filed a motion for summary relief. Brittain attached six inmate affidavits to his motion, each inmate asserting that mere nudity does not adversely affect his rehabilitation or treatment, does not cause him to sexually harass others and does not cause him to create a hostile work environment for others. (*See* Brittain's motion.)

## I. Legal Framework

▇▇▇▇ When an inmate claims that a prison policy impinges on the inmate's federal or state constitutional rights, the policy will be deemed permissible if it is reasonably related to legitimate penological interests and is not an exaggerated response to such interests. *Beard v. Banks*, ⸺ U.S. ⸺, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *Payne v. Department of Corrections*, 582 Pa. 375, 871 A.2d 795 (2005) (noting that the *Turner* standard applies to claims under both the federal and state constitutions). An inmate challenging the constitutional validity of a Department policy bears the burden of proving that it is unreasonable for the Department to believe that the policy advances a legitimate penological interest. *Id.*

▇▇▇▇ The factors relevant to determining whether a prison policy is reasonable have been summarized as follows: (1) whether the policy has a valid, rational connection to a legitimate governmental interest;[4] (2) whether alternative means are open to inmates to exercise the asserted right;[5] (3) what impact an accommodation of the right would have on guards and

3. The Department avers that the policy: (1) is consistent with the goal of rehabilitating inmates; (2) is consistent with treatment objectives for inmates; (3) prevents a hostile work environment for Department employees; (4) prevents employees and inmates from being "objectified" rather than being regarded as persons; (5) helps to teach inmates to view people as people; (6) prevents inappropriate sexual desires among inmates; and (7) prevents sexually offending behavior. (New Matter, ¶¶ 17–23.)

4. A policy cannot be sustained where the logical connection between the policy and the asserted goal is so remote as to render the policy arbitrary or irrational. *Turner*. Moreover, the governmental objective must be a legitimate and neutral one; where a prison policy restricts free speech rights, the policy must further an important or substantial governmental interest that is unrelated to the suppression of expression. *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner*.

5. Where other avenues are available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the policy. *Turner*.

inmates and prison resources;[6] and (4) whether there are ready alternatives to the policy.[7] *Id.*

## II. Case Law

Most of the cases addressing the constitutionality of prison policies that restrict inmate access to pornography are federal cases. Before considering the motions before us here, we shall review some of that case law.

### A. *Amatel*—Common Sense

In 1996, the United States Congress passed the Ensign Amendment, which bars the use of Bureau of Prison (BOP) funds to pay for the distribution of commercial material that is "sexually explicit or features nudity." In regulations promulgated pursuant to the Ensign Amendment, the BOP defined "sexually explicit" to mean a depiction of actual or simulated sexual acts. Under the regulations, a publication "features nudity" if it contains depictions of genitalia or female breasts on a regular basis. The regulations exempt materials if they contain nudity to illustrate medical, educational or anthropological content. In addition, the BOP issued a statement stating that the following are permitted: National Geographic; Our Bodies, Our Selves; Sports Illustrated (Swimsuit Edition); and Victoria's Secret Catalog. *See Amatel v. Reno,* 156 F.3d 192 (D.C.Cir., 1998).

In *Amatel,* three inmates who were denied receipt of Playboy or Penthouse magazine filed suit alleging that the Ensign Amendment violated their First Amendment rights. The United States Court of Appeals for the District of Columbia Circuit (D.C.Circuit) rejected the inmates' argument, concluding that Congress might reasonably have believed that the prohibited materials would adversely affect inmate rehabilitation. The court stated that Congress might have believed that the banned materials tend to thwart **character growth** by treating women purely as objects of male sexual gratification. The court acknowledged that there was **no record evidence** to support such a belief. However, "[c]ommon sense tells us that prisoners are more likely to develop the now-missing self-control and respect for others if prevented from poring over pictures that are themselves degrading and disrespectful." *Id.* at 199.

In dissenting, Circuit Judge Wald stated that the reasonableness determination should depend, in all but the most obvious cases, on evidence in the record. The dissent stated that, although a few studies have shown a causative relationship between violent pornography and short-term increases in aggression, the Attorney General's Commission on Pornography stated that scientific evidence shows no causal relationship between exposure to non-violent and non-degrading sexual depictions and acts of sexual violence. The dissent also noted that, in some prisons, material featuring adult nudity is effective in rehabilitating pedophiles. *Amatel* (Wald, J., dissenting).

---

**6.** When accommodation of the asserted right will have a significant ripple effect on fellow inmates or prison staff, courts should be particularly deferential to the informed discretion of corrections officials. *Turner.*

**7.** The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns. *Turner.* Prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the inmate's constitutional complaint, but if an inmate can point to an alternative that fully accommodates the inmate's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the policy does not satisfy the reasonable relationship standard. *Turner.*

With respect to the concept of rehabilitation, the dissent stated that the most basic goal of rehabilitation is to convince an inmate that his own best interest lies in avoiding future criminal activity. The dissent stated that some depictions of nudity have the potential for striking a life-changing chord, e.g., Michelangelo's David or the grim photographs of naked bodies piled in the pits of Germany's concentration camps. The dissent also found the Herculean task of "character-molding," the majority's stated goal of rehabilitation, to be inherently problematic in its First Amendment implications because it involves casting emerging prisoners in society's own image. *Id.*

### B. *Wolf*—Limits of Common Sense

In *Wolf v. Ashcroft*, 297 F.3d 305 (3d Cir.2002), federal prisoners challenged in federal district court a BOP policy that prohibits the viewing of movies rated R or NC–17 in prison. The district court, relying on common sense, granted judgment on the pleadings. The prisoners appealed to the United States Court of Appeals for the Third Circuit (Third Circuit), which reversed and remanded.

The Third Circuit stated that, although the connection between a prohibition and a government interest may be a matter of common sense in certain instances, there may be situations in which the connection is not so apparent and does require factual development.

> Whether the requisite connection may be found solely on the basis of "common sense" will depend on the nature of the right, the nature of the interest asserted, the nature of the prohibition, and the **obviousness of its connection** to the proffered interest. The showing required will vary depending on how close the court perceives the connection to be.... On remand, the District Court must describe the interest served, con-

sider whether the connection between the policy and the interest is obvious or attenuated—and, thus, to what extent some foundation or evidentiary showing is necessary—and, in light of this determination, evaluate what the government has offered.

*Wolf*, 297 F.3d at 308–09 (emphasis added)(footnote omitted).

### C. *Ramirez*—Rehabilitation/Treatment

In *Ramirez v. Pugh*, 379 F.3d 122 (3d Cir.2004), another federal prisoner challenged the Ensign Amendment and its implementing regulations in federal district court. The district court granted a motion to dismiss filed by the government, concluding that there was a rational connection between the ban on material that is "sexually explicit or features nudity" and prisoner rehabilitation. The inmate appealed to the Third Circuit, which reversed and remanded.

The Third Circuit recognized that the D.C. Circuit had rejected a similar challenge in *Amatel*, holding that common sense revealed a rational link between the ban and rehabilitation. However, the Third Circuit did not see the obviousness of the connection using common sense. Following *Wolf*, the Third Circuit required the government to place some evidence in the record to establish the connection between the ban and rehabilitation.

The Third Circuit also disagreed with the D.C. Circuit to the extent that the court, without any evidence, defined the goal of rehabilitation as character growth.

> Certainly falling within the legitimate bounds of the interest [in rehabilitation] are prison policies designed to target the **specific behavioral patterns** that led to a prisoner's incarceration in the first place, or behavioral patterns emerging during incarceration that

present a threat of lawbreaking activity other than that for which the prisoner was confined. To say, however, that rehabilitation legitimately includes the promotion of "values," broadly defined, **with no particularized identification of an existing harm towards which the rehabilitative efforts are addressed,** would essentially be to acknowledge that prisoners' First Amendment rights are subject to the pleasure of their custodians.

*Ramirez*, 379 F.3d at 128 (emphasis added).

Having expressed its disagreement with *Amatel*, the Third Circuit held that, where the purpose of a prison policy is rehabilitation, the government must describe with particularity the specific rehabilitative goal or goals that justify the challenged policy. This means that the government must provide more than a generalized statement that sexual self-control is relevant to the rehabilitation of the entire class of prisoners and more than a conclusory assertion that sexually explicit publications elevate the value of immediate sexual gratification over the values of respect and consideration for others. *Id.*

### D. Sexual Harassment/Hostile Work Environment

#### 1. *Mauro*—Legitimate Interest

In *Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir.1999), inmates challenged a policy prohibiting inmates from possessing "sexually explicit material," defined as materials that show frontal nudity. The policy was aimed at reducing the sexual harassment of female officers. In the past, inmates had used the nude photographs: (1) to openly masturbate in front of female officers; and (2) to draw anatomical comparisons between the persons depicted in the photographs and female officers. The United States Court of Appeals for the Ninth Circuit (Ninth Circuit) held that, although no court had addressed whether reducing sexual harassment of prison employees by inmates is a legitimate **penological** interest, it is a legitimate interest.

In dissenting, Circuit Judge Kleinfeld wrote that the disgusting things that some prisoners did to sexually harass female guards were plainly prohibited by the disciplinary code. The dissent stated that, instead of punishing everyone by banning nude photographs, the authorities should have punished only the inmates who harassed the female guards. *Mauro* (Kleinfeld, J., dissenting). Circuit Judge Fletcher, also dissenting, agreed that conventional jail and prison disciplinary measures are more appropriate responses to the harassment of female guards by inmates. The dissent stated that imposing a complete ban on nude photographs is totally out of proportion to the problem. *Mauro* (Fletcher, J., dissenting).

#### 2. *Jewell*—Not Legitimate Penological Interest

In *Jewell v. Gonzales*, 420 F.Supp.2d 406 (W.D.Pa.2006), the district court addressed the constitutionality of the BOP policy that prohibits the viewing of movies rated R or NC–17 in prison. The government asserted that the prohibition furthers the government's interest in providing a non-hostile work environment for BOP employees. However, the district court stated:

First, it is not clear whether courts have recognized this particular concern as a legitimate **penological** interest. But moreover, given the rigors normally associated with conditions in the prison setting—not the least of which is regular interaction with hardened criminals—it strains credulity to believe that individuals who have chosen corrections work as an avocation would be strongly offended by the showing of an R-rated film.

Though there may be employees within the BOP who possess particularly delicate sensibilities, we find the likelihood of an employee taking serious offense to an R-rated film to be so low as to render the general ban irrational as a means of ensuring a non-hostile working environment.

*Jewell,* 420 F.Supp.2d at 437 (emphasis added).

## III. Summary Relief

Having reviewed case law addressing the constitutionality of prison policies that restrict inmate access to pornography, we now consider the motions for summary relief currently before this court.

Pa. R.A.P. 1532(b) states that this court may, at any time after the filing of an original jurisdiction matter, enter judgment if the right of the applicant thereto is clear. Summary relief under Pa. R.A.P. 1532(b) is similar to the relief envisioned by the rules of civil procedure governing summary judgment.[8] *See* Pa. R.A.P. 1532, *Note.*

### A. Department's Motion

#### 1. Rehabilitation/Treatment

■ The Department claims that its policy banning all materials that depict nudity has a valid, rational connection to the rehabilitation and treatment of inmates. However, the Department's policy contains no exceptions for materials that depict nudity to illustrate medical, educational or anthropological content.[9] Thus, absent evidence to the contrary, the Department's policy, on its face, bans National Geographic, Michelangelo's David and Holocaust photographs. We see no valid, rational connection between the prohibition of such materials and the rehabilitation and treatment of inmates. In fact, common sense dictates that there is no such connection.[10]

Finally, pursuant to *Ramirez,* the Department must provide more than a conclusory assertion that materials containing nudity elevate the objectification of people over the values of respect and consideration of others. The Department must provide more than a generalized statement that sexual self-control is relevant to reha-

---

**8.** Pa. R.C.P. No. 1035.2 provides that, after the relevant pleadings are closed, a party may move for summary judgment in whole or in part as a matter of law:

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. No. 1035.2. Here, the parties have not completed discovery. Thus, in the motions before us here, the moving party has the burden of proving that there exists no genuine issue of any material fact as to a necessary

element of the cause of action or defense which could be established by additional discovery or expert report. Pa. R.C.P. No. 1035.2(1); *Stonybrook Condominium Association v. Jocelyn Properties, Inc.,* 862 A.2d 721 (Pa.Cmwlth.2004), *appeal denied,* 583 Pa. 698, 879 A.2d 784 (2005).

**9.** We note that, as stated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the First Amendment protects materials which, taken as a whole, have serious literary, artistic, political or scientific value. The Court explained that medical books used for the education of physicians and related personnel necessarily use graphic illustrations and descriptions of human anatomy. *Miller.*

**10.** Moreover, it is undisputed that the Department allowed inmates to retain materials containing nudity for more than a year before confiscating and destroying them.

bilitation. The Department must describe with particularity the specific rehabilitative goal or goals that justify the policy. Here, regarding rehabilitation, the Department claims only that the policy teaches inmates to view people as people.

### 2. Sexual Harassment/Hostile Work Environment

 The Department also claims that its policy banning all materials that depict nudity has a valid, rational connection to the legitimate penological goal of preventing sexual harassment and a hostile work environment for prison staff. However, as stated in *Mauro* and *Jewell*, it is not clear that the prevention of sexual harassment and a hostile work environment is actually a **penological** interest, as opposed to a labor matter.

Accordingly, we deny the Department's motion for summary relief.

### B. Brittain's Motion

The Department's policy bans any materials that depict nudity, including materials that contain nudity to illustrate medical, educational and anthropological content. Moreover, it is undisputed that the Department waited more than a year to implement its policy, raising serious questions about whether the Department truly believed that the policy has a valid, rational connection to a legitimate penological interest.

However, there is a genuine issue of material fact as to whether a rational connection exists between viewing nudity and prisoner rehabilitation. Although Brittain denies such a connection, neither party has produced an expert report making or refuting a connection. Moreover, it is not clear whether sexual harassment is actually a penological interest or merely a labor concern.

Accordingly, we also deny Brittain's motion for summary relief.

### *ORDER*

AND NOW, this 6th day of September, 2007, the applications for summary relief filed by Shannon Brittain and by Jeffrey A. Beard, Ph. D., Secretary of the Pennsylvania Department of Corrections, are denied.