974 A.2d 479

**Shannon BRITTAIN, Appellee**

**v.**

**Jeffrey A. BEARD, Ph.D., Secretary of the Pennsylvania Department of Corrections, Appellant.**

Supreme Court of Pennsylvania.

Submitted on Briefs Oct. 22, 2008.

Decided July 20, 2009.

Suzanne Noelle Hueston, Esq., Harrisburg, Debra S. Rand, Esq., PA Dept. of Corrections, for Jeffrey A. Beard, appellant.

Shannon Brittain, appellee pro se.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice BAER.

This is an interlocutory appeal by permission from an order of the Commonwealth Court, which denied cross-motions for summary relief filed by the Pennsylvania Department of Corrections ("the Department") and Shannon Brittain ("Brittain"), an inmate of the Pennsylvania penal system.[1] Our inquiry is limited to determining whether the Commonwealth Court erred by denying the Department's motion for summary relief on the basis that it failed to justify sufficiently its adoption of administrative directive 803–1 ("DC–ADM 803–1"), which prohibits inmates from possessing pornography. For the reasons set forth herein, we hold that the burden was not on the Department to prove the validity of its administrative directive, but rather on Brittain, as the inmate, to raise a genuine issue of material fact regarding the alleged invalidity of the pornography ban. As Brittain did not satisfy his burden in this regard, summary relief should have been granted in favor of the Department. Accordingly, we reverse that portion of the Commonwealth Court's order that denied the Department summary relief.

The record reveals that on November 29, 2005, the Department adopted DC–ADM 803–1, which is an amendment to DC–ADM 803, entitled "Inmate Mail and Incoming Publications."[2] DC–ADM 803–1 provides that "[i]n order to assist with rehabilitation and treatment objectives, reduce sexual harassment and prevent a hostile work environment, inmates

1. As noted *infra,* by order dated July 25, 2008, we granted the Department permission to appeal pursuant to Pa.R.A.P. 1311 (Interlocutory Appeals by Permission) (Official Note). *See infra* at 483 n. 6.

2. As discussed later herein, DC–ADM 803 established procedures governing inmate mail privileges and incoming publications, and prohibited an inmate from sending or receiving correspondence containing . . . "obscene materials." *Id.* at VI(A)(3)(d). The directive defines "obscene" by referring to the statutory definition set forth in 18 Pa.C.S. § 5903.

will not be permitted to receive or possess pornography. . . ."
It further states:

> The following categories of material are considered "porno-graphic:"
>
> (1) materials in which the purpose is sexual arousal or gratification; or
>
> (2) the material contains nudity which means showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple (exposure through "see through" materials is considered nudity for purposes of this definition).

DC–ADM 803–1.

Additionally, DC–ADM 803–1 directed inmates to either turn in their pornographic materials or mail them out of the institution by January 1, 2007, after which date such materials would be considered contraband and would be confiscated, subjecting the inmate to a charge of misconduct. On April 5, 2006, the Department adopted DC–ADM 803–2 to clarify the pornography prohibition in DC–ADM 803–1. This amendment states, *inter alia*, that "[i]f the publication or material has significant literary or educational value it may be approved on a case by case basis, taking into consideration educational programs the inmate is involved in, and the type of his/her offense (*i.e.*, sexual offender)."

Ten months later, on February 12, 2007, Brittain, a convicted rapist, filed a *pro se* petition for review in Commonwealth Court's original jurisdiction, alleging that DC–ADM 803–1 violated the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 1 and 25 of the Pennsylvania Constitution. He maintained that DC–ADM 803–1 improperly prohibited inmates from possessing materials depicting mere nudity, including artwork, drawings, photographs, and *Playboy Magazine*, without any legitimate penological purpose. Brittain sought an order enjoining the Department from confiscating and destroying materials in his

possession pursuant to the policy. Brittain attached what he characterizes as affidavits, signed by him and six other inmates, which assert that mere nudity does not adversely affect their personal rehabilitation or treatment, does not cause them to sexually harass others, and does not cause them to create a hostile work environment for prison employees.

The Department filed an answer with new matter, in which it asserted that DC–ADM 803–1 was promulgated to address the following legitimate penological interests: (1) it is consistent with the goal of rehabilitating inmates; (2) it is consistent with inmate treatment objectives; (3) it prevents a hostile working environment for the Department's employees; (4) it prevents employees and inmates from being "objectified," rather than being regarded as persons; (5) it prevents materials that are counterproductive to the goal of sex offender therapy, which is to teach inmates to view people as people; (6) it prevents materials that will foster inappropriate sexual desires among inmates; and, (7) it prevents materials that are often a precursor to sexually offending behavior. The Department attached to its new matter the "verifications" of a licensed psychologist and a unit manager of a state prison, which state that those individuals have reviewed the factual averments set forth in the Department's answer and new matter, and concluded, under the penalty of perjury, that they are true and correct.

Rather than explaining why the Department's enumerated justifications for DC–ADM 803–1 were unreasonable, in his response to the new matter, Brittain demanded from the Department "strict peer-review scientific-evidence" establishing the validity of the pornography ban. At the close of the pleadings, both the Department and Brittain filed cross-motions for summary relief.

In its motion, the Department alleged that it was entitled to summary relief because Brittain had failed to raise a genuine issue of material fact, and erroneously asserted that the Department had the burden of proving, through competent evidence, that DC–ADM 803–1 is related to the various legiti-

mate penological interests it had set forth in its answer and new matter. The Department emphasized that it was not required, in response to Brittain's lawsuit, to present "peer-review scientific-evidence" to demonstrate that its policy is reasonable. Finally, the Department asserted that it satisfied the requisites for determining the constitutionality of a prison regulation set forth in the United States Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and, pursuant to that decision, its anti-pornography policy should be accorded deference and upheld.

In Brittain's motion for summary relief, he asserted that there were genuine issues of material fact regarding what effect, if any, exposure to nudity and/or *Playboy Magazine* have upon inmates. He reiterated that it was the Department's burden, in response to his lawsuit, to prove, *via* testimony, that its administrative directive is reasonable. Brittain's prayer for relief, therefore, sought an order denying the Department's motion for summary relief, and directing the Department to provide discovery materials relating to why it adopted the anti-pornography policy. Brittain additionally sought a preliminary injunction, precluding the Department from utilizing DC–ADM 803–1 pending the outcome of his case.

The Commonwealth Court denied both motions for summary relief. *Brittain v. Beard*, 932 A.2d 324 (Pa.Cmwlth. 2007). Initially, it acknowledged that "[a]n inmate challenging the constitutional validity of a Department policy bears the burden of proving that it is unreasonable for the Department to believe that its policy advances a legitimate penological interest." *Id.* at 327. In denying the Department's motion for summary relief, however, the court implicitly found that the Department bore some initial burden of demonstrating the validity of its administrative directive. Relying on a litany of federal court decisions, the primary case being *Ramirez v. Pugh*, 379 F.3d 122 (3d Cir.2004), the Commonwealth Court held that "the Department must provide more than a conclusory assertion that materials containing nudity elevate the objectification of people over the values of respect and consider-

ation of others." *Brittain*, 932 A.2d at 331.[3]  It further required the Department to "describe with particularity the specific rehabilitative goal or goals that justify the policy." *Id.* at 332.  According to the Commonwealth Court, the Department here only claimed that DC–ADM 803–1 "teaches inmates to view people as people." *Id.*[4]

Addressing the Department's motion for summary relief, the Commonwealth Court concluded that the Department failed to demonstrate a valid, rational connection between the prohibition of materials that depict nudity, and the rehabilitation and treatment of inmates. *Id.* at 331.  Notwithstanding that the Department had amended its policy prior to the filing of the instant action to clarify that materials with "significant literary or educational value" were not considered pornography, the Commonwealth Court held that the pornography ban "contains no exceptions for materials that depict nudity to illustrate medical, educational or anthropological content." *Id.* It concluded that, "absent evidence to the contrary, the Department's policy, on its face, bans National Geographic, Mi-

**3.** In *Ramirez*, an inmate challenged a prison regulation implementing a statutory ban on the use of federal funds to distribute sexually explicit material to prisoners.  The district court granted the government's pretrial motion to dismiss, holding that the regulation was valid because, intuitively, it was rationally connected to the government's asserted interest in prisoner rehabilitation.  The Third Circuit Court of Appeals reversed, finding the record inadequate as a matter of law to demonstrate the validity of the restriction.  The *Ramirez* court concluded that the connection between the restriction at issue and the government's rehabilitative interest was not so obvious as to eliminate the need for the development of a factual record. *Id.* at 129.  Accordingly, it remanded to the district court to "identify with particularity the specific rehabilitative goals advanced by the government to justify the restriction at issue, and then give the parties the opportunity to adduce evidence sufficient to enable a determination as to whether the connection between these goals and the restriction is rational under *Turner*." *Id.* at 128.  As explained *infra*, the principal rationale set forth in *Ramirez* is undermined by the United States Supreme Court's plurality decision in *Beard v. Banks*, 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006).

**4.** Additionally, relying primarily upon *Jewell v. Gonzales*, 420 F.Supp.2d 406 (W.D.Pa.2006), the Commonwealth Court held that it was not clear whether the prevention of sexual harassment and a hostile work environment for prison employees constituted a penological interest or merely a labor concern. *Id.* at 332.

chelangelo's David, and Holocaust photographs." *Id.* It further noted that the Department permitted inmates to retain materials containing nudity for more than one year before destroying them. *Id.* at 331 n. 10. Thus, it concluded that the Department was not entitled to summary relief.

In denying Brittain's motion for summary relief, the Commonwealth Court found that there was a genuine issue of material fact as to whether a rational connection exists between the prohibition on viewing materials containing nude images and prisoner rehabilitation. *Id.* at 332. It held that, "[a]lthough Brittain denies such a connection, neither party has produced an expert report making or refuting a connection." *Id.*

The Department thereafter filed in the Commonwealth Court a motion for reconsideration, and an application to amend its order to include the requisite language from 42 Pa.C.S. § 702(b), so as to enable the Department to file a petition for permission to appeal.[5] On October 5, 2007, the Commonwealth Court denied both the application to amend the order and the motion for reconsideration.

As noted, the Department subsequently filed a petition for review in this Court, seeking permission to appeal the Commonwealth Court's interlocutory order pursuant to Pa.R.A.P. 1311 (Official Note).[6] This Court granted the Department's

5. This provision provides as follows:
   (b) INTERLOCUTORY APPEALS BY PERMISSION.—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.
   42 Pa.C.S. § 702(b).

6. The Official Note to Pa.R.A.P. 1311 provides, in relevant part:
   Where the administrative agency or lower court refuses to amend its order to include [a statement pursuant to 42 Pa.C.S. § 702(b)], a petition for review under Chapter 15 of the unappealable order of

petition on July 25, 2008, and permitted the instant appeal to determine the following issue:

Whether the Commonwealth Court erred in denying [the Department] summary review on the basis that [the Department] failed to show that Policy No. DC–ADM 803–1 was reasonably related to legitimate penological interests. *See Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ("The burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.")

█ As this issue raises a question of law, our standard of review is *de novo* and our scope of review is plenary. *Allegheny Inspection Serv. v. North Union Twp.*, 964 A.2d 878, 889–890 (Pa.2009). Regarding the standard for granting summary relief, we note that Pa.R.A.P. 1532(b) provides:

At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.

Pa.R.A.P. 1532(b). Summary relief under Pa.R.A.P. 1532(b) is similar to the relief envisioned by the rules of civil procedure governing summary judgment. *See* Pa.R.A.P. 1532 (Official Note) (providing that subdivision (b) of Pa.R.A.P. 1532 "authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and preemptory and summary judgment.").[7]

denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect ... is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

Pa.R.A.P. 1311 (Official Note). *See also Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 651 (2001) (holding that "[i]f an appellate court determines that the lower court abused its discretion in not certifying the matter for appeal, the appellate court may then proceed to address the merits of the appeal.").

7. Pa.R.C.P. 1035.2 sets forth the following standard governing motions for summary judgment:

418

The Department argues before us that the Commonwealth's Court's decision erroneously placed upon it the burden of demonstrating the validity of the pornography ban. It maintains, to the contrary, that the United States Supreme Court has clearly held that where, as here, an inmate challenges a prison regulation, "[t]he burden ... is not on the State to prove the validity of the prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). The Department contends that Brittain has failed to raise an issue of fact for submission to a jury regarding the validity of the pornography ban because he merely set forth a bald allegation that the pornography ban is unconstitutional and unsupported by "peer review scientific evidence," and attached self-serving statements of prisoners, attesting that banning pornography does not facilitate the Department's enumerated objectives. The Department concludes that this showing utterly fails to satisfy Brittain's burden of demonstrating that there is a genuine issue of material fact for submission to a jury concerning the unreasonableness of the Department's belief that DC–ADM 803–1 advances a legitimate penological interest.

The Department argues further that *Turner v. Safley*, *supra*, requires that courts afford prison regulations deference so that prison officials' judgments regarding institutional administration are left undisturbed. According to the Department, the Commonwealth Court not only failed to give deference to DC–ADM 803–1, but also imposed a "heightened" proof requirement by suggesting that it was required to present expert reports in order to demonstrate the constitu-

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law.

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

tionality of its policy denying pornography to Brittain, a convicted rapist. In so holding, the Department argues that the Commonwealth Court improperly relied on the federal case of *Ramirez v. Pugh, supra,* the reasoning of which was rejected by the United States Supreme Court in *Beard v. Banks,* 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (plurality), as placing too high an evidentiary burden upon prison officials.[8] Thus, the Department concludes that it has demonstrated a clear right to relief because, contrary to the Commonwealth Court's holding, it was Brittain's burden to raise a factual issue regarding the purported unreasonableness of its administrative directive, and he has failed to do so. Accordingly, the Department requests that we reverse that portion of the Commonwealth Court's order that denied its application for summary relief.[9]

In his *pro se* appellate brief, Brittain argues before us that the Commonwealth Court properly denied the Department's motion for summary relief because there are genuine issues of material fact regarding the validity of DC–ADM 803–1. He refers to his presentation of the affidavits of several inmates, which purportedly refute the Department's enumerated policy justifications by demonstrating that images of nudity and *Playboy Magazine* do not, according to them, adversely affect their rehabilitation or treatment, do not cause them to sexually harass others, and do not cause them to create a hostile work environment for prison employees. Brittain further disputes the assertion that the Commonwealth Court's ruling requires the Department to present expert reports to demonstrate that DC–ADM 803–1 was constitutional. Instead, he maintains that the Commonwealth Court simply noted that, at this juncture in the proceedings, neither party had presented expert testimony or demonstrated that summary relief was warranted. He contends that if the burden is on him, as an inmate, to demonstrate the invalidity of the challenged por-

---

8. The Department does not address the fact that *Beard v. Banks* was a plurality decision.

9. As expected, the Department asserts that we should affirm that portion of the Commonwealth Court order that denied Brittain's motion for summary relief.

nography ban, due process requires that he be afforded the opportunity to do so at trial, and not have his case dismissed on the pleadings, as urged by the Department.

Upon careful review of the arguments presented, we agree with the Department and hold that the Commonwealth Court erred by denying its motion for summary relief where the burden of raising a factual issue regarding the validity of DC–ADM 803–1 rested on Brittain, and he failed to satisfy such burden. As the following discussion of the case law makes clear, Brittain's assertions and his submission of statements of fellow inmates, even if believed, failed to demonstrate that the Department unreasonably exercised its professional judgment in concluding that a ban on pornography will advance the goals of rehabilitating prisoners and provide a safer workplace. As there were no genuine issues of material fact, and the Department demonstrated its clear entitlement to relief as a matter of law, summary relief should have been granted in its favor.

We begin our analysis with the seminal case of *Turner v. Safley*, *supra*, in which the United States Supreme Court recognized an enduring tension between two conflicting principles in operation whenever a prisoner brings a constitutional challenge to a law or regulation affecting prison policy. The first is that prison walls do not form a barrier separating prison inmates from the protections of the Constitution; and the second is the practical reality that the judicial branch is ill-suited for running the country's prisons; a task committed to the particular expertise of the legislative and executive branches. *Id.* at 84–85, 107 S.Ct. 2254.

In an effort to reconcile these interests, the High Court held that "when a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. Specifically, it held that traditional notions of strict scrutiny typically afforded a fundamental constitutional right are not applicable in this context. The Court reasoned:

In our view, such a standard [requiring a prison regulation to be reasonably related to legitimate penological interests] is necessary if "prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' [Labor] Union*, 433 U.S. [119], at 128, 97 S.Ct. [2532], at 2539[, 53 L.Ed.2d 629 (1977)]. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Procunier v. Martinez*, 416 U.S. [396], at 407, 94 S.Ct. [1800], at 1808[, 40 L.Ed.2d 224 (1974)].

*Turner*, 482 U.S. at 89, 107 S.Ct. 2254.[10]

In applying such deferential standard, the Court in *Turner* specifically directed courts to assess: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and, (4) whether there are "ready alternatives" to the rule that would accommodate prisoners' rights at *de minimus* cost to penological interests. *Id.* at 89–91, 107 S.Ct. 2254. The Court in *Turner* did not require the presen-

10. In *Payne v. Commonwealth, Department of Corrections*, 582 Pa. 375, 871 A.2d 795, 810 n. 11 (2005), discussed *infra*, this Court found the rationale underlying the *Turner* deferential standard to be compelling, and equally applicable to inmate challenges to prison regulations raised under the Pennsylvania Constitution. Here, as noted, Brittain invokes both the Pennsylvania and United States Constitutions.

tation of scientific evidence or any threshold evidentiary showing by prison officials.

The United States Supreme Court applied the *Turner* rationale in *Overton, supra,* where inmates challenged as unconstitutional prison regulations that placed various restrictions on their visitation rights. In *Overton,* the Court held that it "need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests." *Id.* at 132, 123 S.Ct. 2162 Consistent with its holding in *Turner,* it held that courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* Significantly, the Court emphasized that "[t]he burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

After examining the various *Turner* factors as they applied to the prison regulations at issue, the Court in *Overton* concluded that the inmates failed to satisfy their burden of disproving the reasonableness of the subject regulations. It held that the trial testimony established that the restrictions on inmate visitation bore a rational relationship to the prison officials' interest in, *inter alia,* maintaining internal security and imposing discipline on the prisoners *via* the withdrawal of inmate privileges.

Our Court explicitly relied on the reasoning of the United States Supreme Court in *Overton* when we rejected an inmate challenge to a Department administrative directive, similar to the one at issue here, in *Payne v. Commonwealth, Department of Corrections, supra.* Unlike *Turner* and *Overton,* but identical to the instant case, *Payne* arose in the context of cross-motions for summary judgment. In *Payne,* inmates challenged DC–ADM 803, the predecessor to DC–ADM 803–1, which, as noted in n. 2, *supra,* prohibited inmates from "sending or receiving correspondence containing . . . obscene

materials." The inmates argued that DC–ADM 803 violated the right to free communication of thoughts pursuant to Article I, Section 7 of the Pennsylvania Constitution.[11]

As in the case before us, in its answer and new matter, the Department in *Payne* set forth various legitimate penological interests that were furthered by the restrictions on inmates' receipt of obscene materials, namely: preventing predatory behavior, preventing both consensual and non-consensual homosexual liaisons, preventing the spread of sexually transmitted diseases, and protecting the safety and authority of prison staff. *Id.* at 810. The Department also submitted statistical evidence demonstrating that the incidence of assault and sexual misconduct declined after its implementation of its ban on the receipt of obscene materials.

Recognizing the presumptive reasonableness of the prison policy, and that the burden is on the prisoner to disprove the prison regulation's validity, we concluded in *Payne* that the prisoners did not even attempt to satisfy this burden. *Id.* We clarified that "the question is not whether the curtailment of distribution of obscene materials will remedy the aforementioned institutional concerns, but whether the Department reasonably believed that it would do so." *Id.* Concluding that the Department established the reasonableness of its beliefs, and there was no evidence to the contrary, we rejected the inmates' challenge.

We reach the same conclusion here. Absent evidence to the contrary, and affording deference to the Department's professional judgment as mandated by the controlling case law, we find that Brittain failed to satisfy his burden. We hold that once an inmate commences an action challenging a prison regulation, it is the obligation of the Department to set forth, in its answer to the inmate's complaint, its belief that there is a valid and rational connection between the challenged

11. This constitutional provision provides, in relevant part, as follows:
     The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may speak, write and print on any subject, being responsible for the abuse of that liberty.
     PA. CONST. art. I, § 7.

regulation and an enumerated legitimate penological interest. The Department has no specific evidentiary burden at this stage of the proceeding. In order to survive summary dismissal, the inmate then has the burden of either: (1) demonstrating that a genuine issue of material fact exists regarding the reasonableness of the Department's belief that its prison regulation will further the enumerated penological interests; or, (2) producing evidence of facts essential to the inmate's cause of action, which would require the issue to be submitted to a jury.

Here, consistent with the *Turner* factors, and as it did in *Payne*, the Department set forth in its answer, as well as in its subsequent motion for summary relief, its belief that there is a "valid, rational connection" between the anti-pornography policy and a legitimate governmental interest because the pornography ban serves to foster the rehabilitation of inmates, including sex offenders like Brittain, and is consistent with inmate treatment objectives, particularly discouraging inmates from "objectifying" others, rather than treating them as individuals. The Department further noted that DC–ADM 803–1 prevents inmates from possessing materials that foster inappropriate sexual desires, which are often a precursor to sexually offending behavior. As to the second *Turner* factor, the Department maintained that DC–ADM 803–1 expressly provided for an alternative means for inmates to preserve materials containing pornography by sending those items home. Regarding the third *Turner* factor, the Department asserted that if prison officials accommodated Brittain's asserted constitutional right to have unrestricted access to pornography, they would foster a hostile working environment for prison employees and encourage inmates to engage in sexually offending behavior. Finally, the Department alleged that there was no other realistic remedy available to the Department to address the legitimate governmental interests in: (1) maintaining a non-hostile work environment for its employees; (2) discouraging inmates from objectifying persons; and (3) impeding inappropriate behavior.

Simply put, Brittain failed to refute the Department's assertions in any meaningful way or set forth specific facts that, if believed, would warrant a determination in his favor. We reiterate that Brittain's submission of self-serving non-expert averments of fellow prisoners, which merely assert that they do not believe their rehabilitation and treatment are hindered by viewing pornography, were insufficient to raise a factual issue regarding whether the Department's professional judgments to the contrary were unreasonable. Further, contrary to Brittain's argument, we hold that the Department is not required to present evidence where, as here, the inmate challenging the regulation at issue has failed to raise a genuine issue of material fact as to the invalidity of the prison policy. In fact, our decision in *Payne* militates the opposite result. As noted, in *Payne*, the conclusion that the inmate failed to raise a factual issue concerning the reasonableness of the prison regulation was fatal to the inmate's case.

Under these circumstances, where the Department advanced legitimate penological interests supporting its anti-pornography policy, and Brittain did not raise a genuine issue of material fact as to the unreasonableness of the Department's belief that its policy furthers such interests, Brittain has not met *Turner's* high standard. Thus, we defer to the Department's judgment that DC–ADM 803–1 serves the interests for which it was intended. This is not to say that, in the appropriate case, an inmate could never establish the invalidity of an inmate restriction on pornography. We simply conclude that the burden of doing so is high, and has not been met in the instant case *via* bald assertions of unconstitutionality and the attachment of self-serving inmate affidavits.

Our conclusion is consistent with the plurality decision of the United States Supreme Court in *Beard v. Banks, supra,* which requires an inmate challenging a prison regulation to articulate specific facts that could lead to a determination in his favor or face summary dismissal. In *Beard,* an inmate filed an action wherein he contended that a Pennsylvania Department of Corrections' policy that forbid access to all newspapers, magazines, and photos for certain classes of

inmates bore no reasonable relation to any legitimate penological objective, and consequently violated the First Amendment. The Department placed into the record a statement of material facts not in dispute, the deposition of a deputy superintendent at the prison, prison policy manuals, and related documents that supported its administrative decision to ban the materials at issue.

Both parties filed motions for summary judgment. In its motion, the Department reiterated several justifications for its prison policy, including the need to motivate better behavior on the part of difficult prisoners by providing them with an incentive to proceed to a less-restricted level of the prison. The inmate asserted in his motion for summary judgment that the prison policy was unreasonable as a matter of law, given the incorrigibility of the inmates concerned and the overall deprivations associated with that class of confinement. The district court granted summary judgment in favor of the Department. A divided panel of the Third Circuit Court of Appeals reversed, finding the record inadequate to support the validity of the prison policy, as a matter of law.

In a plurality opinion, the United States Supreme Court reversed the Third Circuit Court of Appeals, and held that the Department was entitled to summary judgment based on the High Court's previous decisions in *Turner* and *Overton*.[12] Initially, based on the procedural posture of the case, the plurality recognized that it must draw all justifiable factual inferences in the inmate's favor. It distinguished, however, between evidence of "disputed facts" and evidence of "disputed matters of professional judgment." The court explained that with respect to disputed matters of professional judgment, it must afford deference to the views of prison authorities pursuant to *Overton*. *Beard*, at 530, 126 S.Ct. 2572. It held that "[u]nless a prisoner can point to sufficient evidence regarding such issue of [professional] judgment to allow him

12. The plurality opinion was authored by Justice Breyer, and was joined by Chief Justice Roberts, and Justices Kennedy and Souter. As discussed *infra*, Justices Thomas and Scalia concurred in the judgment only, and Justices Stevens and Ginsburg dissented. Justice Alito did not participate in the consideration or decision of the case.

to prevail on the merits, he cannot prevail at the summary judgment stage." *Id.*

The plurality concluded that the inmate failed to provide evidence rebutting the Department's exercise of professional judgment as reflected in its policy. It found that the deposition of the deputy superintendent established a rational connection between the policy of banning newspapers, magazines, and photos and the legitimate penological objective of increasing incentives for better prison behavior among the most recalcitrant prisoners. Thus, the Court concluded that *Turner's* first factor supports the policy's reasonableness. It found that the second, third, and fourth *Turner* factors were logically related to the policy itself, and added little to the first factor's basic logical rationale. *Id.* at 532, 126 S.Ct. 2572. Concluding that the material presented by the Department was sufficient to demonstrate that the policy was a reasonable one, the Court concluded that the Department was entitled to summary judgment. *Id.* at 533, 126 S.Ct. 2572.

The plurality rejected the Court of Appeals' contrary determination as it "placed too high an evidentiary burden upon the [Department]" and "offer[ed] too little deference to the judgment of prison officials about such matters." *Id.* at 535, 126 S.Ct. 2572. The Court clarified that it was not suggesting that the deference owed prison authorities rendered it impossible for an inmate to ever survive summary judgment in an action challenging a prison policy. *Id.* Rather, it merely held that the Department in *Beard* responded adequately to the allegations in the complaint, and the inmate "failed to point to 'specific facts' in the record that could 'lead a rational trier of fact to find' in his favor." *Id.* at 536, 126 S.Ct. 2572 (citations omitted).[13]

13. In his concurring opinion, Justice Thomas, joined by Justice Scalia, reiterated the view he set forth in his concurring opinion in *Overton*, *i.e.*, that the *Turner* framework for examining inmate challenges to prison regulations should be abrogated in favor of an inquiry into whether a particular prisoner's lawful sentence eliminated a right enjoyed by free persons. Justice Thomas opined that because the inmate's sentence of incarceration in *Beard* extinguished his unfettered

We find this reasoning persuasive, and likewise conclude that the Commonwealth Court in the instant case afforded too little deference to the professional judgment of the prison officials, and failed to recognize that Brittain's motion for summary relief did not raise genuine issues of material fact essential to his cause of action, which required resolution by a jury.[14]

Accordingly, for the reasons set forth herein, we reverse that portion of the Commonwealth Court's order that denied the Department's motion for summary relief.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, TODD, McCAFFERY and Justice GREENSPAN join the opinion.

right to magazines, newspapers, and photographs, the prison regulation banning such material was valid. *Id.*, 548 U.S. at 540, 126 S.Ct. 2572.

Justices Stevens and Ginsberg authored dissenting opinions. In Justice Stevens' dissent, he applied the *Turner* framework for examining the validity of a prison regulation, but concluded that, under the facts presented, the Department failed to establish, as a matter of law, that the ban on newspapers and photographs is reasonably related to the valid interests of prison security and inmate rehabilitation. He noted that the Department did not introduce evidence that its proposed theory of behavior modification had any basis in human psychology or that the challenged rule had, in fact, any rehabilitative effects on the inmates to which it applied. *Id.* at 550, 126 S.Ct. 2572. Similarly, Justice Ginsburg opined in her dissent that pretrial dismissal of the inmate's action was not warranted as the showing made by the Department in support of summary judgment was "slim," and "could be made to justify virtually any prison regulation that does not involve physical abuse." *Id.* at 554, 126 S.Ct. 2572.

**14.** We further find that the instant facts present a stronger case in the Department's favor because the anti-pornography ban in DC–ADM 803–1 is much less restrictive than the prison regulation in *Beard*, which denied all newspapers, magazines, and photographs to certain classes of inmates. Thus, the position taken by the dissent in *Beard*, questioning the reasonableness of the relationship between the ban and the promotion of the Department's interests, does not carry much force when applied to the facts presented here.