**Emory SMITH, Petitioner**

v.

**Jeffrey A. BEARD, Ph.D. Secretary of the Department of Corrections, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2011.

Decided July 26, 2011.

Emory Smith, pro se.

Debra Sue Rand, Assistant Counsel, Camp Hill, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court are the preliminary objections (POs) in the nature of demurrers filed by Jeffrey A. Beard, Ph.D., Secretary of the Department of Corrections (Secretary), to the Petition for Review (Petition) filed in this Court's original jurisdiction by Emory Smith (Mr. Smith). In the Petition, Mr. Smith challenges the constitutional validity of the Department of Corrections (Department) regulation DC–ADM–803, Inmate Mail and Incoming Publication Policy (Policy)[1] as it applies to Playboy Magazine (Playboy).

1. The Policy, which originally was an admin- istrative directive, was promulgated as a regu-

Specifically, the Petition avers the following. First, Mr. Smith asserts, *inter alia*, that the Petition is a First and Fourteenth Amendment class action suit challenging the constitutionality of the Policy.[2] (Petition ¶ 8.) The Petition avers that the class does not have any other adequate or available corrective remedy to redress the

lation with an effective date of May 29, 2010, approximately a week before Mr. Smith filed the Petition on June 7, 2010. The relevant portions of the Policy are found at 37 Pa.Code §§ 93.2(b)(2), (g)(3), (h), and (i). The Policy at Section 93.2(b)(2) prohibits correspondence that contains, *inter alia*, "obscene or explicit sexual material, or nudity." 37 Pa. Code § 93.2(b)(2). Section 93.2(g)(3)(iv) states that "[p]ublications may not be received by an inmate if they: [c]ontain nudity, obscene material or explicit sexual materials as defined in subsection (i)." 37 Pa.Code § 93.2(g)(3)(iv). Section 93.2(h) provides, in relevant part:

> (h) Exception. Correspondence and publications containing nudity, explicit sexual material or obscene material as defined in subsection (i), may be permitted if the material has artistic, educational or medical value. The following considerations will guide the Department in determining whether to permit nudity, explicit sexual material or obscene material:
> (1) Is the material in question contained in a publication that regularly features sexually explicit content intended to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication will be denied for inmate possession.
> (2) Is it likely that the content in question was published or provided with the primary intention to raise levels of sexual arousal or to provide sexual gratification, or both? If so, the publication or content will be denied for inmate possession.

37 Pa.Code § 93.2(h). Finally, Section 93.2(i) defines the terms "Explicit sexual material," "Nudity," and "Obscene" as used in the Policy to mean:

> Explicit sexual material—Any book, photograph, pamphlet, magazine, printed matter, sound recording, explicit and detailed verbal description, narrative account or ·other material of the following:
> (i) Sexual conduct, which means acts of masturbation, homosexuality, sexual intercourse, sexual bestiality or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if the person is a female, breast.

> (ii) Sadomasochistic abuse, which means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.
> (iii) Sexual excitement, which means the condition of the human male or female genitals when in a state of sexual stimulation or arousal.
> Nudity—The showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering or the showing of the female breast with less than a fully opaque covering of any portion below the top of the nipple, or the depiction of covered male genitals in a discernible turgid state.
> Obscene—Any book, photograph, pamphlet, magazine, printed matter, sound recording, explicit and detailed verbal description, narrative account or other material is considered obscene if one of the following applies:
> (i) An average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest.
> (ii) The subject matter depicts or describes the following in a patently offensive way:
> (A) Ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality.
> (B) Patently offensive representations or descriptions of masturbation or execratory functions.
> (C) In a sexual context, flagellation or torture upon a nude person or one clad only in undergarments, a mask or bizarre costume or fettered, bound or otherwise physically restrained.
> (D) Lewd exhibition of the genitals.

37 Pa.Code § 93.2(i).

2. Mr. Smith's challenge is brought on his own behalf and on the behalf of all past, present, and future adult class prisoners of the Department throughout the Commonwealth of Pennsylvania. (Petition ¶ IV.)

wrongs created by the Policy, Mr. Smith has exhausted the administrative remedies available through the Department, the complexities of the issues involved and the expense of litigation make separate claims by individual class members unlikely or could result in inconsistent adjudications, and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making injunctive and declarative relief appropriate with respect to the class' First and Fourteenth Amendment Constitutional rights." (Petition ¶¶ 8, 17–21.) Second, Mr. Smith asserts that the Policy is overbroad and vague in violation of his First and Fourteenth Amendment rights under the United States Constitution and, therefore, should be declared void. (Petition ¶¶ 9, 16.) Third, Mr. Smith avers that the Policy discriminatorily permits commercial pornography in a piecemeal fashion by permitting magazines and books such as Maxim, Curves, and the Bible, but denying access to Playboy, which Mr. Smith alleges also is commercial pornography. (Petition ¶ 10.) Mr. Smith contends that banning Playboy, which has a rich scholarly history of serious literary, artistic, political, scientific, and educational value is unconstitutional pursuant to *Cline v. Fox*, 319 F.Supp.2d 685 (N.D.W.Va.2004), where the Department's Policy allows Curves and Maxim, which contain "sexually scantil[ ]y clad explicitly posing female models," which inmates "lust off of." (Petition ¶ 13.) The Petition also avers that

the overwhelming majority of offenders whom are "parole[ ] eligible" are rarely if ever given [Department] recommendations for parole even after three years of the original pornography [P]olicy being implemented by the [Secretary] regard-

less of their rehabilitative prescriptive treatment programs participation and completion clearly establishing that not "reading" Playboy Magazine has any effects on rehabilitation, release of inmates from prison, protections of society, treatment or care whatsoever (which discovery will disclose) and that [the Policy] is unconstitutional with it[ ]s intended policy being bogus and substantially vague.

(Petition ¶ 15.) Fourth, the Petition alleges the Policy is unconstitutional because it is

in opposition to Title 18 Pa.C.S.[ ] § 5903's Obscenity Law[']s Legislative intent of protecting children, by [the Policy] unlawfully implementing subsection (c) thereof, and reducing "reading material" to [Mr. Smith] to that *only suitable for children* " and banning Playboy Magazine with it's "rich scholarly history" of "serious literary, scientific, political, artistic and educational values taken as a whole" like the Bible, which is allowed, simply to treat the adult class members like children, with NO security concerns or connections to rehabilitation between "reading" commercial-pornography, in this case, Playboy Magazine, and rehabilitation, affecting the entire class members.

(Petition ¶ 11 (emphasis in original).) Accordingly, Mr. Smith requests this Court to: (1) declare the Policy unconstitutionally overbroad to the extent that it bans First Amendment protection to Playboy; (2) order the Department to amend the Policy to comport with Section 5903(a)(8) of the Crimes Code (Obscenity Law), 18 Pa.C.S. § 5903(a)(8),[3] so as to limit the

---

**3.** Section 5903(a)(8) provides that "No person, knowing the obscene character of the materials or performances involved, shall: possess any obscene material while such person is an inmate of any State correctional institution, county prison, regional prison facility or any other type of correctional facility." 18 Pa.C.S. § 5903(a)(8).

reading material in inmates' possession only to that which is obscene, and that Section 5903(c) [4] does not apply to inmates and is unenforceable against them; (3) order and declare that the Department cannot ban the class members from subscribing to Playboy; (4) order a permanent injunction against Secretary, which will remain in effect until the General Assembly amends Section 5903(a)(8) "to include something more than a ban on inmate's possession of what is defined by them and limited by them of only 'obscene' material"; and (5) order any other adequate relief deemed fair, equitable, necessary, and just. (Petition at 6–7.)

■ Secretary filed POs to each claim, which we will address in turn. However, we first set forth the standards by which we consider preliminary objections in the nature of demurrer. Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure provides that any party to any pleading may file preliminary objections challenging the legal sufficiency of the pleading (i.e., a demurrer). Pa. R.C.P. No. 1028(a)(4). "Preliminary objections in the nature of a demurrer are deemed to admit all well-pleaded material facts and any inferences reasonably deduced therefrom, but not the complaint's legal conclusions and averments." *Danysh v. Department of Corrections*, 845 A.2d 260, 262 (Pa.Cmwlth.2004). "In ruling upon a preliminary objection in the nature of a de-

murrer, our role is to determine whether the facts pled are legally sufficient to permit the action to continue." *Department of Public Welfare v. Joyce*, 128 Pa.Cmwlth. 341, 563 A.2d 590, 591 (1989). To sustain a preliminary objection in the nature of a demurrer, "it must appear with certainty upon the facts pled that the law will not permit recovery." *Id.* If there is any doubt "as to whether the preliminary objection should be sustained, that doubt should be resolved by a refusal to sustain it." *Id.*

### I. First Amendment Claim

■ In the first PO, Secretary makes a preliminary objection in the nature of a demurrer to Mr. Smith's claim that the Policy violates his First Amendment rights and asserts that the Policy, a restrictive prison regulation, is allowable because it is reasonably related to legitimate penological interests and is not an exaggerated response to those objectives. (PO ¶¶ 6–7 (citing *Turner v. Safley*, 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).) Secretary asserts that our Supreme Court held in *Brittain v. Beard*, 601 Pa. 409, 974 A.2d 479 (2009), that the Department's rationale for the Policy satisfies the *Turner* test, and that the Petition does not set forth "specific facts that, if believed, would warrant a determination in his favor" under *Brittain*.[5] (PO ¶¶ 8–9 (quoting *Brit-*

---

4. Section 5903(c) states, in relevant part, that "No person shall knowingly disseminate … explicit sexual materials to a minor," and defines explicit sexual materials as materials which are obscene or:

 (1) any picture, photograph, drawing, sculpture … or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors; or
 (2) any book, pamphlet, magazine, printed matter however reproduced … which con-

tains any matter enumerated in paragraph (1), or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to minors.
18 Pa.C.S. § 5903(c).

5. Attached to Mr. Smith's brief in opposition to Secretary's POs are exhibits purporting to provide the facts alleged to be missing from the Petition. However, Secretary filed a Motion to Strike the exhibits, which this Court granted by Order dated January 12, 2011.

*tain*, 601 Pa. at 425, 974 A.2d at 488).) Mr. Smith responds that Secretary's and the Department's reasoning for the Policy is based on hollow assertions that do not show that possessing Playboy has any negative effects on inmates and that Playboy is not obscene material, but has literary, artistic, political, scientific, and educational value. Additionally, Mr. Smith includes other factual allegations to explain why the Policy violates his First Amendment rights.

■ The United States (U.S.) Supreme Court has held that an inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In *Turner*, the U.S. Supreme Court reconciled the conflicting principles that prison walls do not separate inmates from Constitutional protections and that courts are ill-suited for running prisons by holding that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 84–85, 89, 107 S.Ct. 2254. The *Turner* court further held that, even if the prison regulation infringed upon a fundamental right, the strict scrutiny usually applied to such rights is not applicable in the prison context. *Id.* Thus, pursuant to *Turner*, in assessing a prison regulation courts should determine:

> (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the assert-

ed constitutional right will have on guards, inmates, and prison resources; and (4) whether there are "ready alternatives" to the rule that would accommodate prisoners' rights at *de minimus* cost to penological interests.

*Brittain*, 601 Pa. at 421, 974 A.2d at 486 (quoting *Turner*, 482 U.S. at 89–91, 107 S.Ct. 2254). Consistent with its holding in *Turner*, the U.S. Supreme Court stated in *Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), that courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* at 132, 123 S.Ct. 2162. Moreover, the U.S. Supreme Court, in *Overton*, stressed that "[t]he burden … is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

Our Supreme Court has relied upon both *Turner* and *Overton* in two cases challenging Department administrative regulations, which were directed, like the Policy here, at banning pornography in the corrections system. In *Payne v. Department of Corrections*, 582 Pa. 375, 871 A.2d 795 (2005), an inmate challenged a prior version of the Policy, which prohibited inmates from sending or receiving correspondence containing obscene materials, as violating Article I, Section 7 of the Pennsylvania Constitution. After concluding that the *Turner* deferential standard was applicable to inmate challenges to prison regulations under the Pennsylvania Constitution, our Supreme Court held that the policy at issue in *Payne* was presumptively reasonable and that the inmate had not

Accordingly, we look only to the pleadings to determine whether the Petition sets forth the necessary facts that would support a determination in Mr. Smith's favor.

attempted to satisfy his burden of disproving the validity of the policy. *Payne*, 582 Pa. at 399 n. 11, 871 A.2d at 810 n. 11. Accordingly, our Supreme Court granted summary judgment in the Department's favor and, in doing so, clarified that "the question is not whether the curtailment of distribution of obscene materials will remedy the aforementioned institutional concerns, but whether the Department reasonably believed that it would do so." *Id.* at 400, 871 A.2d at 810.

In *Brittain*, an inmate challenged the Department's administrative directive DC–ADM 803–1, which prohibited inmates from possessing pornography (defined similarly to the Policy's definition of pornography) and directed inmates to turn over any pornographic material in their possession, claiming the directive violated the First and Fourteenth Amendment of the Federal Constitution and the Pennsylvania Constitution. Included with the challenge were affidavits from other inmates, who indicated that their rehabilitation and treatment was not hindered by viewing pornography. *Brittain*, 601 Pa. at 413, 974 A.2d at 481. In its answer and new matter, the Department asserted numerous penological reasons for the ban on pornography, including the ban being consistent with its goal of rehabilitating the inmate and inmates' treatment objectives, preventing a hostile working environment for the Department's employees, preventing employees and inmates from being objectified, and preventing materials that were counter-productive to the goal of sex offender therapy, which is meant to teach inmates to view people as people. *Id.* The inmate responded by demanding "strict peer-review scientific-evidence" to support the Department's contentions. *Id.* The inmate and the Department filed cross-motions for summary judgment, both of which this Court denied. The Supreme Court considered the matter on an inter-locutory appeal by permission. Relying on *Overton, Turner,* and *Payne,* the Supreme Court held that the Department had stated legitimate penological interests for the ban on pornography, the ban bore a reasonable relationship to those interests and was not an exaggerated response thereto, and the inmate had not "set forth specific facts that, if believed, would warrant a decision in his favor." *Id.* at 424–25, 974 A.2d at 488. The Supreme Court further noted that the Department alleged that: the policy allowed inmates to preserve their pornographic materials by sending them home; accommodating the inmates' asserted constitutional rights to unrestricted access to pornography would, *inter alia,* "foster a hostile working environment"; and "there was no other realistic remedy available to the Department to address the legitimate government interest[ ] in: (1) maintaining a non-hostile work environment ...; (2) discouraging inmates from objectifying persons; and (3) impeding inappropriate behavior." *Id.* at 424, 974 A.2d at 488. The Supreme Court concluded that the Department's policy satisfied the *Turner* standards and that the inmate had not asserted "specific facts that, if believed," would prove the invalidity of the policy and, accordingly, reversed this Court's decision denying the Department's Motion for Summary Judgment. *Id.* at 425, 428, 974 A.2d at 488, 490.

After reviewing the averments in the Petition, we agree with Secretary that those averments do not include the specific facts necessary to disprove the penological interests asserted by the Department for the Policy, which were approved in both *Brittain* and *Payne* as legitimate and reasonably related to that legitimate interest and satisfying *Turner.* Although Mr. Smith asserts additional explanations and facts in his brief in opposition to Secretary's POs, a brief is not a pleading, *see*

Pa. R.C.P. No. 1017 (defining what constitutes pleadings), and we look only to the pleadings when considering preliminary objections, Pa. R.C.P. No. 1028(a). Moreover, even accepting as true the Petition's averment that the current ban established by the Policy has not resulted in improved rehabilitation of inmates and increased parole recommendations by the Department, (Petition ¶ 15), this was just one of the legitimate penological interests the Department asserted to support the Policy. Accordingly, because the Petition does not assert specific facts that would raise a legally sufficient challenge to the Department's legitimate penological interest addressed by the Policy, we sustain Secretary's PO to the Petition's First Amendment claim.[6]

## II. Equal Protection and Over–Breadth Claims

The second PO demurs to Mr. Smith's challenges to the Policy on equal protection and over-breadth grounds and notes that the Petition does not aver that Maxim or Curves contain nudity or allege facts that would indicate that the photographs contained in those magazines would fall within the definitions or purview of the Policy. (PO ¶¶ 10–12.) According to Secretary, in an equal protection claim, "the relevant inquiry is whether Petitioner's incarcerated status places him in a suspect class"; it is apparent under the law that it does not and, therefore, the Policy must only bear a rational relationship to a legitimate government interest and *Brittain* held that it does. (PO ¶¶ 13–16 (citing *Abdul–Akbar v. McKelvie*, 239 F.3d 307, 318 (3d Cir.2001)).) With regard to the Equal Protection claim, Secretary additionally argues that the Policy does not "make a suspect or quasi-suspect classification," (Secretary's Br. at 19), and notes that Mr. Smith acknowledged that the Policy applies to all inmates equally, (Petition ¶ 10). Thus, Secretary asserts that there can be no reliance on a claim that the Policy discriminates between different groups of inmates. To the extent that the Petition could be read to claim that non-inmates may possess and receive pornography and inmates cannot, Secretary contends that inmates are not members of a suspect class by virtue of their incarcerated status. *Abdul–Akbar*, 239 F.3d at 318. Moreover, with regard to the Petition's over-breadth claim, Secretary asserts that Mr. Smith's reliance on *Cline* is misplaced and the Petition does not aver facts that would indicate that the Policy is unconstitutionally overbroad. Mr. Smith sets forth, in his brief, additional facts and examples of why the Policy is overbroad and violates his Equal Protection rights. He further asserts that common sense establishes that the Policy is overbroad and dictates a more open interpretation of the Policy so as to preclude censorship.

 The Equal Protection Clause requires state actors to treat all persons who

---

6. We note that the cases Mr. Smith relies upon in his brief are distinguishable for various reasons. *See, e.g., Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (involving a First Amendment challenge to *municipal ordinance* regulating live and nude dancing); *Shimer v. Washington*, 100 F.3d 506, 509 (7th Cir.1996) (involving the curtailment of *prison guards'* constitutional rights, *not* prisoners' rights); *Mann v. Reynolds*, 46 F.3d 1055, 1060–61 (10th Cir.1995) (stating that prison officials did not even provide an explanation or rationale for the curtailment of prisoners' ability to meet with attorneys); *Commonwealth v. Greenich*, 420 Pa.Super. 551, 617 A.2d 323 (1992) (involving *the sale* of allegedly obscene materials); *Brightbill v. Rigo, Inc.*, 274 Pa.Super. 315, 418 A.2d 424 (1980) (involving First Amendment challenge to ban on selling certain obscene books and materials at an adult bookstore). With the exception of *Mann*, the cases Mr. Smith cites involve the regulation of *non-inmates'* constitutional rights.

are similarly situated alike. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 449, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). It appears from the Petition that Mr. Smith may be alleging that the Department is somehow violating Playboy's equal protection rights because the Department treats that magazine differently from Maxim, Curves, or the Bible. If that is the case, we reject that contention as being legally insufficient to sustain an Equal Protection cause of action. It is also possible that Mr. Smith is arguing that the Policy violates his equal protection rights by allowing others to acquire and possess Maxim and Curves while precluding him from acquiring and possessing Playboy, or by preventing inmates from acquiring and possessing Playboy when non-inmates are not precluded. Initially, as Secretary observes, the Petition raises no allegation that Maxim or Curves contain nudity or that the images contained therein would fall within the purview of the Policy. The Petition avers that the women in Maxim and Curves are sexually and scantily clad, and explicitly posed. (Petition ¶ 13.) However, even accepting this averment, as we must, we conclude that such averment does not fall within any of the defined prohibited materials set forth in the Policy. 37 Pa.Code § 93.2(i), set forth in footnote 2 *supra*. Neither does the Petition allege that the Bible is substantially similar to Playboy nor why the exceptions set forth in the Policy would not apply to allow inmates to receive and possess the Bible. On these bases, we conclude that the facts alleged in the Petition fail to establish that Maxim, Curves, or the Bible are substantially similar to Playboy and, therefore, the Petition's Equal Protection claim is not sufficiently pled to allow that claim to go forward.[7]

∎ We now turn to the assertion that the Policy is unconstitutionally overbroad. In *Cline*, relied upon by Mr. Smith, the prison policy at issue prohibited all books, magazines, photographs, etc. that contained any description of sexual conduct, but allowed commercial pornography such as Playboy. *Cline*, 319 F.Supp.2d at 693. Thus, the policy prohibited books such as James Joyce's Ulysses and George Orwell's 1984, but permitted Playboy. The district court held that such a policy was overbroad and did not bear a reasonable or rational relationship or connection to the prison's desired goals, which were akin to the Department's rationale for the Policy. *Id.* at 693, 695. As Secretary notes in his brief, unlike the policy at issue in *Cline*, the Policy in this matter prohibits magazines such as Playboy, but contains an exception for materials that have artistic, educational, or medical value. Thus, the unreasonable restriction present in *Cline* is not present here. "[A] [policy] may be invalidated as overbroad if 'a substantial number' of its applications are unconstitutional, 'judged in relation to the [policy's] plainly legitimate sweep.'" *United States v. Stevens*, —— U.S. ——, ——, 130 S.Ct. 1577, 1580, 176 L.Ed.2d 435 (2010) (quoting *Washington State Grange*

---

7. Moreover, it is well-settled that inmates are not a suspect class by virtue of their incarceration. *Jae v. Good*, 946 A.2d 802, 808 n. 13 (Pa.Cmwlth.2008) (citing *Abdul–Akbar*, 239 F.3d at 317–18). Thus, the fact that a prison policy treats them differently than non-inmates will be upheld if the policy bears a reasonable or rational relationship to a legitimate penological purpose. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254 (holding that even where a fundamental constitutional right is implicated, a prison policy will be reviewed using the reasonable relationship test); *Jae*, 946 A.2d at 808 (holding that, where there is no fundamental right or suspect class implicated, the standard for reviewing a policy is the rational basis or reasonable relationship test). Thus, we would not, as suggested by Mr. Smith, be reviewing this claim using strict scrutiny.

*v. Washington State Republican Party,* 552 U.S. 442, 449 n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). Having concluded that the Petition does not contain sufficient allegations that, if believed, would support a determination in Mr. Smith's favor on his First Amendment and Equal Protection challenges, Mr. Smith has not pled facts to establish that any portion of the Policy is unconstitutional. Thus, we conclude that Mr. Smith has not averred the facts necessary to support his challenge to the Policy on either Equal Protection or over-breadth grounds and, therefore, we sustain Secretary's PO to those claims.

### III. Overly Restrictive Nature of the Policy

The third PO is a demurrer to Mr. Smith's claim that the Policy is more restrictive than the Obscenity Law. Secretary asserts that, the mere fact that the Policy may be more restrictive than the Obscenity Law does not state a claim as a matter of law because restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, to which, pursuant to *Brittain,* the Department's Policy is reasonably related. Additionally, Secretary contends that, notwithstanding the fact that inmates retain some constitutional rights, those rights are subject to restrictions and limitations. Mr. Smith responds that there is no evidence that the General Assembly intended the mere-nudity standard used for Section 5902(c) of the Obscenity Law (Dissemination of Minors) to be imposed on adult prisoners, as evidenced by the limited prohibition against the dissemination of *obscene* materials to inmates found in Section 5903(a)(8) of the Obscenity Law.

"Although prisoners do not lose all constitutional rights upon incarceration, *the very nature of confinement and the orderly regulation of prison life re-*quire the withdrawal and limitation of certain rights and privileges." *Madden v. Jeffes,* 85 Pa.Cmwlth. 414, 482 A.2d 1162, 1165 (1984) (emphasis added). Indeed, "the Constitution sometimes permits greater restriction of . . . rights in a prison than it would allow elsewhere." *Humphrey v. Department of Corrections,* 939 A.2d 987, 991 (Pa.Cmwlth.2007) (quoting *Beard v. Banks,* 548 U.S. 521, 528, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (plurality)). In *Payne,* our Supreme Court rejected a similar argument that the prohibition of allowing obscene material from entering correctional facility, as opposed to restricting the ability of the general public to view that material, violated the inmates' constitutional rights as untenable because "prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Payne,* 582 Pa. at 398–99, 871 A.2d at 809. Given that inmates' constitutionally-protected rights may be subject to greater restrictions than those of the general public, we agree with Secretary that simply because the Policy is more restrictive than the Obscenity Law, the Policy is not unconstitutionally over restrictive. This is particularly so where our Supreme Court has twice held that the Policy, or its predecessors, were reasonably related to legitimate penological interests. *Brittain; Payne.* As previously stated, the Petition does not aver facts that would explain why these penological interests are not legitimate and, accordingly, we sustain Secretary's PO to this claim.

### IV. Class Action Claim

Finally, Secretary demurs to the request that this matter be brought as a class action because any decision on the constitutionality of the Policy issued by this Court would be binding on the Department as it applies to all institutions and all inmates. (POs ¶ 21.) Thus, Secre-

tary contends that class action status is not necessary and should be denied. Mr. Smith does not offer any argument in opposition to this PO.

Rules 1701 through 1716 of the Pennsylvania Rules of Civil Procedure address class actions. Pa. R.C.P. Nos. 1701–1716. Pursuant to Rule 1702, one of the requirements for bringing a class action is that a class action would provide "a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708." Pa. R.C.P. No. 1702(5). Rule 1708 sets forth the criteria for certification of a class, one of which is "whether the prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct." Pa. R.C.P. Nos. 1708(a)(3)(i), 1708(b)(1). Here, as noted by Secretary, once this Court renders a decision upon the constitutionality of the Policy, a promulgated regulation, that determination is *binding* on Secretary and the Department as it applies the Policy to all of the institutions and inmates under its control. Thus, if we had concluded that the Petition set forth the necessary facts and averments to survive preliminary objections and ultimately determined that the Policy was unconstitutional, Secretary and the Department would be unable to apply the Policy to *any* inmate at *any* institution, not just Mr. Smith. Mr. Smith has not averred otherwise. Accordingly, we hold that Mr. Smith has not pled sufficient facts to justify the certification of the matter as a class action, and we sustain Secretary's PO to this claim.

For the foregoing reasons, we sustain the POs filed by Secretary and dismiss the Petition with prejudice.

*ORDER*

**NOW,** July 26, 2011, the preliminary objections filed by Jeffrey A. Beard, Ph.D., Secretary of the Department of Corrections, to the Petition for Review (Petition) filed by Emory Smith in this Court's original jurisdiction are hereby **SUSTAINED** and the Petition is **DISMISSED WITH PREJUDICE.**