# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gregory Thomas, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 458 M.D. 2013 |
| | : | Submitted: October 26, 2018 |
| Tom Corbett, et al., Governor of | : | |
| Pennsylvania, John E. Wetzel, | : | |
| et al., Secretary of Corrections, | : | |
| Shirley R. Moore Smeal, | : | |
| Deputy Secretary of Corrections, | : | |
| His Policy Executive Board Makers | : | |
| Sued in Their Individual Capacities | : | |
| and Official Capacities, | : | |
| Respondents | : | |

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  March 22, 2019**


This is a matter in the Court's original jurisdiction.  Presently before the Court for consideration is an application for summary relief filed by former Governor Tom Corbett, Secretary of Corrections John E. Wetzel, and Deputy Secretary of Corrections Shirley R. Moore Smeal (collectively, DOC) with respect

to a petition for review (Petition) filed by Petitioner Gregory Thomas (Thomas).[1] In his Petition, Thomas seeks injunctive and declaratory relief concerning specific DOC policies that allegedly infringe on constitutional rights arising under the First Amendment to the United States Constitution[2] and violate the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[3] For the reasons set forth below, we now grant, in part, and deny, in part, DOC's motion for summary relief.

This action began on July 26, 2013, when Thomas filed the Petition with this Court. Thomas raised several claims in the Petition identifying three of DOC's policies—namely, its conjugal visits policy, prayer oil policy, and phone policy—as infringing on his constitutional rights under the First, Eighth, and Fourteenth Amendments[4] and violating the RLUIPA. On August 19, 2013, DOC filed preliminary objections to the Petition, challenging the legal sufficiency of Thomas's claims. On April 29, 2014, this Court overruled, in part, and sustained, in part, DOC's preliminary objections. As a result of our decision, four of Thomas's claims remained: (1) DOC's policy concerning conjugal visits violates the RLUIPA; (2) DOC's policy concerning prayer oil violates the RLUIPA; (3) DOC's policy concerning prayer oil violates Thomas's constitutional rights under the First Amendment; and (4) DOC's policy concerning phone lists violates Thomas's constitutional rights under the First Amendment. DOC now requests summary relief

---

[1] Petitioner titled his initial filing as a complaint, and DOC filed what it referred to as a motion for summary judgment. Consistent with Chapter 15 of the Pennsylvania Rules of Appellate Procedure, the Court shall treat the filings as a petition for review and an application for summary relief, respectively.

[2] U.S. Const. amend. I.

[3] 42 U.S.C §§ 2000cc to 2000cc-5.

[4] U.S. Const. amends. I, VIII, XIV.

2

on all four claims, alleging that there are no material facts in dispute with respect to each claim.[5] DOC also argues that Thomas's religious claims—*i.e.*, Thomas's claims with respect to the conjugal visit and prayer oil policies—are barred under Pennsylvania's statute of limitations for personal injury actions.[6] Lastly, DOC seeks to have former Governor Thomas Corbett dismissed from the case.

We will first address DOC's request for summary relief on the claims that DOC's conjugal visit and prayer oil policies violate the RLUIPA. Under Pennsylvania Rule of Civil Procedure No. 1035.2, a party may move for summary relief where there is "no genuine issue of any material fact as to a necessary element of the cause of action or defense." Material facts are considered to be facts that could have an effect on the outcome of the case. *Marcellus Shale Coalition v. Dep't of Envtl. Prot.*, 193 A.3d 447, 459 (Pa. Cmwlth. 2018).

In our 2014 opinion, ruling on DOC's preliminary objections, we engaged in a thorough discussion of the framework and applicability of Section 3 of the RLUIPA, 42 U.S.C. § 2000cc-1:

> 42 U.S.C. § 2000cc-1 . . . creates statutory protection for inmates in the exercise of their religion, providing, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the

---

[5] This Court may take judicial notice of administrative policies, as we have done with respect to one of the three policies discussed in this opinion. *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website). The parties have not, however, submitted the administrative policies at issue into evidence. This makes it difficult for this Court to be absolutely certain as to the contents of the policies, especially with respect to the conjugal visit and phone policies.

[6] The Court need not consider DOC's argument that it is entitled to summary relief on Thomas's religious claims due to Thomas's alleged failure to file his action prior to the expiration of the statutes of limitations, because the Court grants summary relief in favor of DOC on those religious claims on other grounds.

3

burden results from a rule of general applicability" unless the government establishes that the burden on religion furthers a "compelling governmental interest" through the "least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). In *Cutter v. Wilkinson*, 544 U.S. 709 . . . (2005), the United States Supreme Court, in addressing a facial First Amendment Establishment Clause[7] challenge to this provision of RLUIPA, observed that this provision was "the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens." *Id.* at 714 . . . . The Supreme Court also noted that governmental accommodation of religious exercise does not necessarily constitute an improper governmental establishment of religion in violation of the First Amendment. *Id.* at 713-14 . . . . RLUIPA, as compared to the Establishment Clause, thereby imposes a greater burden on institutional entities in the defense of regulations and policies that impose burdens on an individual's desire to practice his or her religion while incarcerated.

*Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014) (*Thomas I*) (footnote omitted). The RLUIPA, therefore, provides protection for all exercises of religion, regardless of whether the exercise is compelled by the religious belief or central to it. *Holt v. Hobbs*, ___ U.S. ___, ___, 135 S. Ct. 853, 862 (2015). In order to prevail on a claim under Section 3 of the RLUIPA, an inmate must first show that "an institutional policy or regulation has substantially burdened his sincerely held religious beliefs." *Thomas I*, 90 A.3d at 794. Once the inmate makes such a showing, "the institution must demonstrate that the burden is the least restrictive means of furthering a compelling governmental interest." *Id*. at 794-95. The United States Supreme Court has stated that this standard is "exceptionally demanding" and calls for the institution to show that "it lacks other means of achieving its desired

---

[7] U.S. Const. amend. I. Pursuant to the Establishment Clause, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

4

goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, ___ U.S. at ___. Further, the institution's burden is inmate- and situation-specific, meaning that courts are required to "'scrutinize the asserted harm of granting specific exemptions to *particular* religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action *in that particular context*." *Id.* at 863 (emphasis added) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 727, 134 S. Ct. 2751, 2779 (2014)).

In *Holt*, the United States Supreme Court examined whether an institution violated the RLUIPA where the institution forbade an inmate from growing a half-inch beard in accordance with his Muslim faith. The policy at issue prohibited inmates from growing beards unless the inmate had a dermatological condition. The institution did not question the sincerity of the inmate's belief, but it argued that the policy furthered the institution's compelling interest in curtailing transportation of contraband. According to the institution, it feared that inmates would conceal contraband in their beards. The Supreme Court agreed that the institution had a compelling interest in curtailing transportation of contraband, but it did not agree that the interest could be compromised by allowing an inmate to grow a half-inch beard. The institution already searched all prisoners' hair and clothing and could do the same with the inmate. Denying the exemption to the inmate was, therefore, not the least restrictive means of furthering the institution's compelling interest.

Here, DOC first seeks summary relief on Thomas's claim that DOC's policy concerning conjugal visits violates the RLUIPA. DOC appears to focus on the second prong of the RLUIPA and does not mention whether the conjugal visit policy substantially burdens Thomas's religious beliefs. Further, we decline to make

5

such a ruling. Assuming, *arguendo*, that there is a substantial burden on Thomas's religious beliefs, we must determine whether DOC has met its burden under the second prong of the RLUIPA.

In support of its motion, DOC offers allegations of fact contained in its new matter. DOC asserts that, to the extent that Thomas responded to certain averments in the new matter with general denials, pursuant to Pennsylvania Rule of Civil Procedure No. 1029(b),[8] those general denials must have the effect of an admission. The averments at issue are as follows:

> 48. This [DOC] policy exists because conjugal visits risk the security of the prison and the health of inmates and staff.
>
> 49. Given the need/desire for privacy to engage in conjugal visits, the administration has a compelling interest in prohibiting such visits where at least one of the participants is a known criminal often of a violent crime.
>
> 50. The prohibition also cuts down on the spread of communicable diseases including, but not limited to, those that are sexually transmitted.
>
> 51. With prison overcrowding there is also limited space where conjugal visits for the numerous inmates who would no doubt like them could be accommodated.
>
> 52. In this particular case, to permit conjugal visits would appear to require the [DOC], a criminal justice agency, to place its imprimatur of approval on a situation that may well constitute a crime, *i.e.*, bigamy, if [Thomas] indeed is married to several women simultaneously.

---

[8] Pennsylvania Rule of Civil Procedure No. 1029(b) provides: "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof . . . shall have the effect of an admission." Pa. R.C.P. No. 1029(b). There are exceptions to this general rule; however, none are applicable in this case.

53. The limited non-sexual contact policy reduces the opportunity to pass contraband to inmates.

. . . .

67. [Thomas] is not legally married to anyone.

(Respondents' Answer to Petition for Review and New Matter at 8-9.) In the above averments, DOC asserts that its conjugal visit policy furthers its interests in health and safety and the abatement of criminal activity. DOC further asserts that relaxing restrictions on conjugal visits would lead to the spread of sexually transmitted infections and increase the likelihood that inmates would receive contraband items. In response to these allegations, Thomas merely provided general denials, which asserted that DOC's allegations are conclusions of law. (Petitioner's Response to Respondents' New Matter.)[9] Pursuant to Rule 1029(b), we accept DOC's allegations as undisputed fact. We, therefore, conclude that there are no facts in dispute as to DOC's claim that its conjugal visit policy furthers its compelling interest in ensuring the health and safety of inmates and abating criminal activity.

Our inquiry, however, does not end here. DOC must also show that there are no genuine issues of material fact concerning its allegation that an outright ban on conjugal visits is the least restrictive means of furthering DOC's health and safety interest and its interest in abating criminal activity. Thomas argues that an outright ban is not the least restrictive means because the institution allegedly has movable homes on its property. On the other hand, DOC contends that the nature of conjugal visits requires a complete ban instead of a restriction because these visits require privacy, could spread communicable diseases, create an opportunity to bring in contraband, and may allow for the commission of crimes. Despite Thomas's contentions, we see no dispute concerning any material facts as to the least restrictive

---

[9] Thomas did not include page numbers in this pleading.

7

means prong. DOC has a clear responsibility to ensure the health and safety of inmates and to ensure that criminal activity is abated. DOC cannot abate crime and ensure the health and safety of inmates by permitting conjugal visits, even in a restricted manner. Any conceivable restriction, due to the inherently private nature of a conjugal visit, would still result in health and safety concerns. Accordingly, we will grant summary relief in DOC's favor with respect to the conjugal visit policy.

DOC also seeks summary relief on Thomas's claim that DOC's prayer oil policy violates the RLUIPA. The prayer oil policy permits prison staff to apply a small amount of prayer oil to the wrists of inmates of the Muslim faith before attending "Jumu'ah."[10] The policy also provides that these inmates may have the oil applied to their wrists when the inmates enter Jumu'ah. DOC's prayer oil policy, therefore, operates as a limitation on the use of prayer oil and as an outright ban on the possession of prayer oil. DOC argues that the policy does not substantially burden Thomas's practice of his faith. Further, DOC contends that, even if the policy substantially burdened Thomas's religious exercise, the policy is the least restrictive means of furthering DOC's interest in ensuring a safe environment. According to DOC, the prayer oil may be flammable and could be used to mask the scent of drugs.

---

[10] Neither Thomas nor DOC define the term Jumu'ah. *In O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the United States Supreme Court considered a First Amendment challenge to a prison policy that restricted an inmate's rights to attend Jumu'ah, and described Jumu'ah as "the central religious ceremony of Muslims, 'comparable to the Saturday service of the Jewish faith and the Sunday service of the various Christian sects.'" *Id*. at 360 (Brennan, J., dissenting) (quoting *Shabazz v. O'Lone*, 595 F. Supp. 928, 930 (D.N.J. 1984), *vacated on other grounds*, 782 F.2d 416 (3d Cir. 1986)). The United States District Court for the District of New Jersey in *Shabazz* determined that "Jumu'ah is . . . regarded as the central service of the Muslim religion, and the obligation to attend is commanded by the Qur'an, the central book of the Muslim religion." *Id*. (quoting *Shabazz*, 595 F. Supp. at 930.) Thus, while we do not make a factual finding regarding this term, it appears that Jumu'ah refers to a type of mandatory congregational service.

Concerning the question of whether the prayer oil policy imposes a substantial burden on Thomas's religious beliefs, Thomas claims that the use of prayer oil is integral to his religious practice not just when attending Jumu'ah but when praying by himself. Thomas alleges that he must possess prayer oil because he prays five times daily, and the prayer oil must be used each time he prays. (Petitioner's Br. at 2, 6, and 11.) Further, he states that the use of prayer oil for five daily prayers is "compelled by his understanding of the Prophet Muhammad's teachings." (Petitioner's Br. at 6.) DOC responds by arguing that according to Thomas's Petition, his faith requires the use but not possession of prayer oil. DOC further argues that because the prayer oil policy permits use of the prayer oil, Thomas has not suffered a substantial burden to his religious beliefs. We agree with DOC on this point. Though the prayer oil policy does act as an outright ban on possession of prayer oil, the policy permits inmates to use the prayer oil at certain religious ceremonies. Due to the fact that prayer oil is available for his use, Thomas has not suffered a substantial burden on the exercise of his religion.[11]

As to whether the prayer oil policy is the least restrictive means of ensuring the safety of the inmates, DOC's proffered reason for not allowing the possession of prayer oil is that such oils are flammable and may be used to mask the scent of drugs. Thomas disputes that such oils are flammable in his brief. DOC included these allegations of fact in its new matter. Thomas responded to DOC's averments with general denials. Pursuant to Pennsylvania Rule of Civil Procedure No. 1029(b), the general denials operate as admissions. Thus, we accept

---

[11] Thomas has not met his burden of proving that the prayer oil policy substantially burdens his religious beliefs; therefore, we may end our analysis at this point. Even if Thomas met this burden, however, he could not succeed under the second prong, as is evident from our continued analysis.

those averments as undisputed fact. There are, therefore, no material facts in dispute concerning the allegation that the prayer oil policy is the least restrictive means of furthering DOC's compelling interest. Accordingly, we will grant summary relief on the above grounds.

Next, we will address DOC's request for summary relief on the claim that DOC's prayer oil and phone policies violate Thomas's constitutional rights under the First Amendment. Where constitutional challenges are concerned, this Court applies a two-step approach. *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 83 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013); *Brown v. Pa. Dep't of Corr.*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007). The first inquiry focuses on whether the policy at issue infringes on the inmate's constitutional rights. *Bussinger*, 29 A.3d at 83. Where an inmate has a free exercise of religion claim, as part of addressing the first inquiry we must determine whether the inmate's beliefs are sincerely held and religious in nature. *Meggett v. Pa. Dep't of Corr.*, 892 A.2d 872, 880 (Pa. Cmwlth. 2006). Further, where telephone communication is concerned, this Court has stated that such communication "triggers constitutional concerns." *Thomas I*, 90 A.3d at 798. If we find infringement, we move on to the second inquiry, which is to determine whether the policy is reasonably related to legitimate penological interests. *Id*. In order to resolve the second inquiry, this Court considers the following factors:

> (1) whether there is a "valid, rational connection" between the prison regulation[12] and the legitimate governmental

---

[12] It appears that case law developing these factors makes no distinction between the treatment of challenges to prison regulations and challenges to prison policies or administrative directives. *See Smith v. Beard*, 26 A.3d 551 (Pa. Cmwlth. 2011) (applying case law from cases where inmates challenge prison regulations, policies, and administrative directives, without making distinctions between challenges in each case); *see also Brittain v. Beard*, 974 A.2d 479 (Pa. 2009) (using "regulation" and "policy" interchangeably when applying case law).

10

interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and, (4) whether there are "ready alternatives" to the rule that would accommodate prisoners' rights at *de minimus* [sic] cost to penological interests.

*Brittain v. Beard*, 974 A.2d 479, 486 (Pa. 2009) (emphasis in original). Prison regulations or policies are considered to be valid "'if [they are] reasonably related to legitimate penological interests.'" *Smith v. Beard*, 26 A.3d 551, 557 (Pa. Cmwlth. 2011) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). When applying these factors to determine whether there is a connection between the policy and the penological interest, we must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *accord Smith*, 26 A.3d at 557. In light of this deferential standard, the burden to prove a valid connection between the policy and the penological interest is not on the institution. *Smith*, 26 A.3d at 557. Rather, the inmate must bear the burden of proving that no valid connection exists between the policy and a legitimate penological interest. *Id*. In *Bussinger*, this Court listed a number of interests that our courts have recognized as legitimate penological interests:

(a) maintaining internal security for the protection of prison employers, prisoners, and visitors; (b) deterring the use of drugs and alcohol in prisons; (c) preventing future crime; (d) the rehabilitation of inmates; (e) fair and appropriate treatment among inmates; (f) curbing sexually-offensive behavior in the prison; and (g) controlling/eliminating the flow of contraband into prisons.

*Bussinger*, 29 A.3d at 87.

11

Although Thomas does not specify the clause under the First Amendment that DOC's prayer oil policy violates, a fair reading of the pleadings indicates that Thomas's claim is a free exercise of religion claim. DOC's argument focuses on the second prong of the above test; it posits that the prayer oil policy has a valid connection to the legitimate penological goal of ensuring safety within the prison. DOC argues that allowing inmates to possess prayer oil within their cells would cause safety concerns due to the allegedly flammable nature of the oil. Further, DOC contends that prayer oil, if possessed by inmates, could be used to cover smells of contraband. Thomas argues that the policy is not connected to a legitimate penological interest because he alleges that prayer oil is not flammable and cannot, therefore, undermine the safety of the prison. As we discussed earlier in this opinion, DOC included these averments in its new matter, to which Thomas responded in general denials. Pursuant to Pennsylvania Rule of Procedure No. 1029(b), Thomas's general denials operate as admissions. Accordingly, we will grant DOC summary relief on the claim that DOC's prayer oil policy violates Thomas's constitutional rights under the First Amendment.

DOC further seeks summary relief on Thomas's claim that DOC's phone policy[13] violates his constitutional rights under the First Amendment. Thomas

---

[13] We take judicial notice of DOC policy DC-ADM 818 as set forth on DOC's official website at:

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/818%20Automated%20Inmate%20Telephone%20System.pdf (last visited March 18, 2019).

*See Figueroa*, 900 A.2d at 950 n.1 (taking judicial notice of information found on DOC's website). The policy, however, appears to be a compilation of portions of documents, including policy statements, policies, and a bulletin, with varying effective dates spanning from 2012 to 2015, put together to form DC-ADM 818. Although it appears that DOC issued DC-ADM on April 18, 2012, a bulletin indicates that DOC subsequently amended Section 2-01 of DC-ADM 818, as originally issued on February 12, 2014. The version of Section 2-01 that is included in the

12

contends that DOC's phone policy, which purportedly does not allow a telephone number to appear on more than one inmate's phone list, violates his free speech rights under the First Amendment. DOC does not challenge Thomas's assertion that the phone policy infringes on Thomas's free speech rights; DOC does, however, argue that the policy has a valid connection to the legitimate penological interest of discouraging criminal activities which could otherwise be fostered by allowing inmates to contact mutual friends of other inmates. Thomas argues that there is no valid connection between DOC's phone policy and any legitimate penological interest. Specifically, Thomas posits:

> The telephone system is the most expensive, it has every high tech feature necessary [to] not be a legitimate security concern to the point to disallow inmates from having the same phone number on the list. The intention behind this practice is not in the best interest of family, society, rehabilitation initiatives re-entry back into society. Its over-reachimg [sic].

(Petitioner's Brief in Opposition to Respondents' Preliminary Objections at 10.) Thomas also alleges that DOC monitors inmates' phone calls, decreasing the possibility of any security risks posed by inmates contacting mutual friends. (*Id.* at 20.) At this stage of the proceedings, DOC has failed to establish that there is no dispute concerning any material fact on this claim. Accordingly, we will deny

---

compilation contains a notation that it was issued on February 12, 2014—which is after Thomas filed his Petition. The Court is unable to ascertain what version of DC-ADM 804 was in affect at the time Thomas filed his Petition. Furthermore, the bulletin appears to delete subsection B.6 of Section 2 of DC-ADM 818—*i.e.*, the language at issue with respect to DOC's phone policy. It is unclear from our review of DC-ADM 818 whether DOC included the language that appears to be at issue (as set forth in Section 2, subsection B.6) in DC-ADM 818 as issued on April 18, 2012, whether DOC added it at a later date (possibly on February 12, 2014), and/or whether DOC subsequently deleted this language, thereby possibly rendering this claim moot. Thus, the Court has concerns that material issues of fact may exist as to the substance of DOC's phone policy.

13

summary relief on the claim that DOC's phone policy violates Thomas's constitutional rights under the First Amendment.

DOC also urges this Court to dismiss former Governor Corbett from this lawsuit on the grounds that Thomas has brought suit against Governor Corbett in violation of 42 U.S.C. § 1983.  In order to bring a claim under Section 1983, the plaintiff must allege a constitutional violation and show that the violation was "committed by a person acting under the color of state law."  *Pa. Workers' Comp. Judges Prof'l Ass'n v. Exec. Bd. of Cmwlth.*, 39 A.3d 486, 493 (Pa. Cmwlth. 2012), *aff'd*, 66 A.3d 765 (Pa. 2013).  The plaintiff must, therefore, allege that the individual had personal involvement in the alleged violations.  *Watkins v. Pa. Dep't of Corr.*, 196 A.3d 272, 275 (Pa. Cmwlth. 2018).  We agree that Thomas does not allege that Governor Corbett was personally involved in any of the alleged wrongs done to him.  Such a claim cannot, therefore, be brought against Governor Corbett.

Accordingly, we will grant DOC's motion for summary relief with respect to Thomas's claims that DOC's conjugal visit and prayer oil policies violate the RLUIPA and that DOC's prayer oil policy violates his constitutional rights under the First Amendment.  We will dismiss Governor Thomas Corbett as a named defendant.  We, however, will deny DOC's motion for summary relief as to Thomas's claim that DOC's phone policy violates his constitutional rights under the First Amendment.

P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Thomas,                                   :
                              Petitioner          :
                                                  :
         v.                                       :   No. 458 M.D. 2013
                                                  :
Tom Corbett, et al., Governor of                  :
Pennsylvania, John E. Wetzel,                     :
et al., Secretary of Corrections,                 :
Shirley R. Moore Smeal,                           :
Deputy Secretary of Corrections,                  :
His Policy Executive Board Makers                 :
Sued in Their Individual Capacities               :
and Official Capacities,                          :
                              Respondents         :

# **O R D E R**

AND NOW, this 22ⁿᵈ day of March, 2019, it is hereby ordered that Respondents' application for summary relief is GRANTED, in part, and DENIED, in part, as follows:

1. Summary relief is GRANTED in favor of Respondents on the claim that the Department of Corrections' (DOC) conjugal visit and prayer oil policies violate the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C §§ 2000cc to 2000cc- 5.

2. Summary relief is GRANTED in favor of Respondents on the claim that DOC's prayer oil policy violates Petitioner's constitutional rights under the First Amendment to the United States Constitution.

3. Summary relief is DENIED on the claim that DOC's phone policy violates Petitioner's constitutional rights under the First Amendment to the United States Constitution.

It is further ordered that DOC's request to dismiss Governor Thomas Corbett from this case is GRANTED.

_____
P. KEVIN BROBSON, Judge